IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHESTER OZAROWSKY,

        Plaintiff,                            09cv1622
                                              **ELECTRONICALLY FILED**

   v.

OWENS-ILLINOIS, INC.,

        Defendant.

**MEMORANDUM OPINION**

Before the Court are the parties' Cross-Motions for Summary Judgment filed pursuant to Fed. R. Civ. P. 56. Doc. nos. 24 and 28. Plaintiff, Chester Ozarowsky, sued defendant, Owens-Illinois, Inc., the successor company to plaintiff's former employer, seeking, *inter alia*, a declaration that defendant violated the Employee Retirement Income Security Act of 1974 (ERISA), when it did not pay pension benefits to plaintiff. On December 9, 2009, defendant removed this civil action from the Court of Common Pleas of Washington County on the basis that this Court has original jurisdiction under 28 U.S.C. § 1331. After this Court denied defendant's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, discovery ensued.

Both parties now move this Court to enter judgment in their favor. Defendant argues for judgment in its favor on two grounds: (1) plaintiff's claim is time-barred or (2) that his claim is not supported by the terms of the collective-bargaining agreement ("CBA"). Doc. No. 25. Conversely, plaintiff contends the CBA entitles him to pension benefits. Doc. No. 30. The matter has been fully briefed by both parties (see doc. nos. 25, 29, 33 and 35) and is now ripe for decision. After careful consideration of all the submissions, this Court shall grant defendant's Motion for Summary Judgment and deny plaintiffs's Motion for Summary Judgment for the reasons that follow.

## I. Background

Certain facts are not contested. In 1945, plaintiff began working for Hazel Atlas. As an employee of Hazel Atlas, plaintiff was a member of the Brockway Glass Bottle Blowers' Association of the United States and Canada, ("the Union"). Brockway Glass bought the plant where plaintiff worked in 1964. Plaintiff remained employed at the plant until January of 1965. He was 36 years old at the date of his separation from the plant.

At time of his separation of employment from the plant, a CBA was in effect. The relevant portion of the CBA reads as follows:

> Article 17
> Pensions
>
> 1. Effective January 1, 1955, each Manufacturer established a pension plan covering certain employee represented by the Union. The following provisions apply to each plan:
>
> \*        \*        \*
>
> (b)  The plan provides
>   (i)  normal retirement benefits on the general basis of $2.00 per month for each year of credited service prior to age 65 to all persons retiring at age 65 and prior to March 1, 1963 with a maximum benefit of $70.00 per month, and $2.50 per month for each year of credited service prior to age 65 to all persons retiring at age 65 on or after March 1, 1963 without limitation as to the maximum amount of retirement benefit.

Plaintiff attained the age of 65 on January 18, 1994. Plaintiff contends he was entitled to receive pension benefits from defendant as of January 18, 1994. Plaintiff admits that prior to 2005, he never did anything to investigate why he was not receiving pension benefits from defendant.

Plaintiff filed a complaint in the Court of Common Pleas of Washington County seeking a declaration stating he is entitled to pension benefits from defendant starting at age 65, even though

he ceased working for defendant at age 36. Plaintiff's complaint sought a declaration under ERISA stating that he is entitled to his pension benefits. Doc. no. 1-1. Defendant removed this case under a federal preemption theory, 28 U.S.C. § 1331. Doc. no. 1.

In its notice of removal, defendant also posited that the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, preempted plaintiff's claims because the gravamen of plaintiff's complaint involved interpreting the CBA between the parties. *Id*. Plaintiff conceded that the LMRA governs this matter. See the parties' Joint Fed.R.Civ.P. 26(F) Report. Doc. no. 10, ¶2.

Plaintiff now urges this Court to rule as a matter of law in his favor, claiming that the CBA clearly supports his contention that he is entitled to pension benefits from defendant when he became 65 years old, as of January 18, 1994. Conversely, defendant argues that as a matter of law, the CBA clearly supports its position that plaintiff is not entitled to benefits. Defendant also contends that plaintiff is barred by the statute of limitations from obtaining any pension benefits under the CBA.

## II. Standard of Review

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, *i.e.* the material facts, however, will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. *Id.* In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248-49.

To demonstrate entitlement to summary judgment, defendant, as the moving party, is not required to refute the essential elements of the plaintiff's cause of action. Defendant needs only point out the absence or insufficiency of plaintiff's evidence offered in support of those essential elements. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Once that burden has been met, plaintiff must identify affirmative evidence of record that supports each essential element of his cause of action. If plaintiff fails to provide such evidence, then he is not entitled to a trial, and defendants are entitled to summary judgment as a matter of law.

In sum, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law. It is on this standard that the Court has reviewed the parties' cross-motions for summary judgment and their responses thereto.

### III. Discussion

**A. Contract Interpretation**

Although construction of collective bargaining agreements is generally governed by federal law, traditional rules of contract construction apply when not inconsistent with federal labor law. *Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d

Cir.1993); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957) (federal substantive law governs the meaning of collective bargaining agreements). Although a collective bargaining agreement differs from an ordinary contract (*Griesmann v. Chemical Leaman Tank Lines, Inc.*, 776 F.2d 66, 72 (3d Cir.1985)), the meaning of a collective bargaining agreement may be determined by applying general rules of contract law as long as federal labor law does not provide a conflicting rule. *Textile Workers*, 353 U.S. at 457.

The interpretation of a collective bargaining agreement or other plan document is typically a question of law. *Sheet Metal Workers Local 19 v. Keystone Heating and Air Conditioning*, 934 F.2d 35, 41 (3d Cir.1991). Interpretation of a written contract is a function for the court when the terms and surrounding circumstances are unambiguous. *Id*. The initial determination of whether terms are ambiguous is itself a question of law. *St. Paul Fire and Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 (3d Cir.1991).

"[T]rial courts are bound to interpret contractual terms to give effect to the parties' 'objective manifestations of their intent' rather than attempt to ascertain their subjective intent. Only if the terms used are ambiguous, or the contract is not fully integrated, should the trial judge allow the finder of fact to consider evidence that might vary or add to the contract's express terms." *Griesmann,* 776 F.2d at 72 (internal citations omitted).

Terms of a contract are ambiguous if they can have two or more reasonable meanings. *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 233 (3d Cir. 2001). As the United States Court of Appeals for the Third Circuit expounded in *American Cyanamid Co. v. Fermenta Animal Health Co.*, the definition of "ambiguous" is as follows:

To decide whether a contract is ambiguous, we do not simply determine whether,

> from our point of view, the language is clear. Rather, we "hear the proffer of the parties and determine if there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." *Sheet Metal Workers* [ *v. 2300 Group, Inc.*], 949 F.2d [1274] at 1284 [ (3d Cir.1991) ] (brackets in original) (quoting *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir.1980)). Before making a finding concerning the existence or absence of ambiguity, we consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. *Id.*; [*International Union v.*] *Mack Trucks*, 917 F.2d at 111 [ (3d Cir.1990) ]; see also Restatement (Second) of Contracts § 223 cmt. b (1981) ("There is no requirement that an agreement be ambiguous before evidence of a course of dealing can be shown...."). Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning.

*Id.*, 54 F.3d at 181, quoting *Teamsters Indus. Emp. Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir.1993).

Based in the foregoing law and authority, this Court first determines – after considering the contract language, the meanings or interpretations suggested by counsel, and the extrinsic evidence offered by each party in support of their respective interpretations – that Article 17 is clear and unambiguous. Because this Court has determined the language of the CBA to be clear and unambiguous, it is the plain meaning of the contract language which controls the parties' rights and obligations.

This Court cannot reasonably construe the plain meaning of the language found in Article 17 of the CBA to mean anything other than retiring from Brockway Glass at age 65. A contract will not be construed as ambiguous if the Court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir.1995). Furthermore, a contract will not be rendered ambiguous by the mere fact that the parties do not

agree on the proper construction. *Id*.

Accordingly, this Court finds that the clear and unequivocal meaning of ". . . normal retirement benefits . . . to all persons retiring at age 65 . . ." means retiring from Brockway Glass at age 65, not simply attaining the age of 65 and being entitled to retirement benefits, regardless of the employee's current employer. Therefore, defendant's interpretation of Article 17 of the CBA is proper, and this Court will accordingly grant summary judgment in favor of defendant, while denying plaintiff's Motion for Summary Judgment on this basis.

### B. Statute of Limitations

Although this Court has found that the plain and unambiguous meaning of Article 17 of the contract requires this Court to rule in favor of defendant and against plaintiff, the statute of limitations argument raised by defendant also bears noting and would yield a consistent result: judgment in favor of defendant and against plaintiff.

Defendant argued that its non-payment of pension benefits under Article 17 of the CBA from January 18, 1994 (when plaintiff turned 65 years old) provided plaintiff with adequate notice that it was not paying pension benefits under the CBA. Plaintiff's response to this argument, (despite his admission that prior to 2005, he never did anything to investigate why he was not receiving pension benefits from defendant) suggests that defendant needed to do more than simply not pay plaintiff. Plaintiff contends that he needed some form of express, written denial from defendant to trigger the running of the statute of limitations. This Court disagrees.

First, the accrual date for federal claims "is governed by federal law, irrespective of the source of the limitations period." *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 (3d Cir. 2007). The Court in *Miller* further explained, "[t]o determine the accrual date of a federal claim, we

utilize the federal "discovery rule" when there is no controlling federal statute. Under this rule, a statute of limitations begins to run when a plaintiff discovers or should have discovered the injury that forms the basis of his claim." *Id*. (citations omitted).

As applied to ERISA cases, the discovery rule has been refined into a more specific "clear repudiation" rule or concept. *Id*. The clear repudiation rule does not require a formal denial to trigger the statute of limitations. *Id*. at 521. To the contrary, the rule includes other forms of repudiation when a beneficiary knows or should know he has a cause of action. *Id.*

As explained in *Miller*, and upon applying the clear repudiation concept here, this Court observes that non-payment of an award of benefits can serve as "an event other than a denial" that triggers the statute of limitations, as long as it is (1) a repudiation (2) that is clear and made known to the beneficiary. *Id*., *Cf. Romero v. Allstate Corp.*, 404 F.3d 212, 220-26 (3d Cir.2005) (applying the clear repudiation rule to plan amendment resulting in a reduction in benefits).

Regarding the first requirement, an underpayment in *Miller* qualified as a repudiation because the plan's determination that a beneficiary receive less than his full entitlement was deemed to effectively be a partial denial of benefits. *Miller*, 475 F.3d at 521. Like a denial, an underpayment is adverse to the beneficiary and, therefore, repudiates his rights under a plan. *Cf.* 29 C.F.R. § 2560.503-1(m)(4) (defining "adverse benefit determination" to include "a denial, reduction, or termination of, or a *failure to provide or make payment* ( in whole or in part ) for, a benefit") (emphasis added). Plaintiff here received the extreme underpayment – no payment. Thus, if "shorting" or underpaying a person qualifies as a repudiation, nonpayment easily meets the first part of this test.

Regarding the second requirement, the Court of Appeals in *Miller* held that repudiation by

8

underpayment should ordinarily be made known to the beneficiary when he first receives his miscalculated benefit award. *Id.*, citing *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1180-81 (3d Cir. 1992) ("[A]n employee's receipt of diminished payment gives immediate, obvious notice to an employee that something is amiss . . . ."). At that point, the beneficiary should be aware that he has been underpaid and that his right to a greater award has been repudiated. *Miller*, 475 F.3d at 522, citing *Cotter v. Eastern Conference of Teamsters Retirement Plan*, 898 F.2d 424, 429 (4th Cir. 1990) (suggesting that benefit award can constitute a repudiation of further benefits for purposes of accrual). In sum, the Court of Appeals in *Miller* held that the beneficiary must exercise reasonable diligence to ensure the accuracy of his award. *Id*. at 521-22.

Turning to the instant matter, defendant's failure to pay any amount to plaintiff after he turned 65 years old in 1994 under Article 17 of the CBA should have been clear to him upon his initial lack of receipt of payments in 1994. Here, where there was simply no payment, something plaintiff in this case should have quickly and more readily discovered, the statute of limitations began to run from the first missed payment. Even construing facts in a light most favorable to plaintiff, thereby giving him a four-year statute of limitations, the statute would have run by January 18, 1998.

Moreover, statutes of limitations are intended to encourage "rapid resolution of disputes, repose for defendants, and avoidance of litigation involving lost or distorted evidence." *Romero*, 404 F.3d at 223. These aims are served when the accrual date anchors the limitations period to a plaintiff's reasonable discovery of actionable harm. *Miller*, 475 F.3d at 425. This ensures that evidence is preserved and claims are efficiently adjudicated. *Id.*

In contrast, a statute of limitations not based on reasonable discovery is effectively no

9

limitation at all. *Id.* Such would be the case here if this Court held that plaintiff's cause of action accrued only upon defendant's formal denial of his claim. Under this rule, a plaintiff could not receive benefit checks for decades before deciding to investigate his denial. *Id.* A plaintiff could thereby trigger the statute of limitations at his own discretion, creating an indefinite limitations period. *Id.* The Court in *Miller* declined to invite such a result. Accordingly, this Court will not extend such an invitation and finds that plaintiff is time-barred from bringing his claim for pension benefits under Article 17 of the CBA.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHESTER OZAROWSKY,

    Plaintiff,

v.

OWENS-ILLINOIS, INC.,

    Defendant.

09cv1622
**ELECTRONICALLY FILED**

## ORDER

**AND NOW, this 6th day of July, 2010,** after due consideration to Defendant's Motion for Summary Judgment (doc. no. 24), and Plaintiff's opposition thereto (doc. no. 33), and Plaintiff's Motion for Summary Judgment (doc. no. 28) and Defendant's opposition thereto (doc. no. 35) **IT IS HEREBY ORDERED** that said Defendant's Motion for Summary Judgment (doc. no. 24) is GRANTED, and Plaintiff's Motion for Summary Judgment (doc. no. 28) is DENIED.

BY THE COURT:

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: all ECF registered counsel